IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02764-REB-KLM

JAMES FAIRCLOTH,

     Plaintiff,

v.

CELIA SCHWARTZ, Legal Assistant for BVCF, in her official and individual capacities, and
GERRY BLAND, Hearings Officer for BVMC/BVCF, in his official and individual capacities,

     Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint [#115] (the "Motion").[1]  Plaintiff, who is proceeding pro se, filed a Response [#117] in opposition to the Motion.  Defendants have not filed a reply and their time to do so has elapsed.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion has been referred to this Court for a Recommendation regarding disposition [#116].  The Court has reviewed the Motion, Plaintiff's Response, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#115] be **GRANTED in part** and **DENIED in part**.

---

[1]  [#115] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system [CM/ECF].  I use this convention throughout this Recommendation.

1

## I. Summary of the Case

This case pertains to Colorado Department of Corrections ("CDOC") inmate James Faircloth's ("Plaintiff") claims that Celia Schwartz ("Defendant Schwartz") and Gerry Bland ("Defendant Bland") violated his rights under the Americans with Disabilities Act ("ADA") and his First, Eighth, and Fourteenth Amendment rights in connection with a dispute in the prison law library.[2]  Plaintiff asserts his claims pursuant to 42 U.S.C. § 1983 against both Defendants in their official and individual capacities. *Fourth Am. Compl.* [#107] ¶ 3.  He is seeking monetary damages, punitive damages, declaratory relief, injunctive relief, and attorney's fees. *Id.* ¶¶ 37-38.

Plaintiff alleges that on October 10, 2012, he "was at the law library at BVMC and asked [D]efendant Schwartz for files to be transferred from C.T.C.F. on LexisNexis." *Id.* ¶¶ 3-4.  He alleges that Defendant Schwartz responded by stating that if Plaintiff ever files a grievance against her like he did against fellow CDOC officer Smith on September 14, 2012, he would "lose." *Id.* ¶¶ 1, 3.  He alleges that she also stated that "it'd behoove [Plaintiff] not to oppose [her] in any way shape or form regardless of whether [she's] right or wrong," and then refused to provide him with legal materials he requested. *Id.* ¶¶ 3-4.  Plaintiff maintains that when he asked her if she was refusing because he disobeyed a particular prison regulation, Defendant Schwartz told a correctional officer that he was making threats, which resulted in his placement in segregation for two weeks. *Id.* ¶¶ 5-10.

---

[2] Plaintiff's Complaint asserts claims for "the loss of the protections afforded under the ADA [and] 1st, 4th, 5th, 6th, 8th, and 14th amendment[s]." *Fourth Am. Compl.* [#107] at 7.  The Court finds, however, that Plaintiff has not alleged any facts supporting Fourth, Fifth, or Sixth Amendment claims.  Therefore, the Court interprets Plaintiff's Complaint to assert only ADA and First, Eighth, and Fourteenth Amendment claims.

Plaintiff avers that he was ultimately found not guilty of making threats.  *Id.* ¶ 10.

Plaintiff next alleges that in November 2012, Defendant Schwartz harassed him multiple times, banned him from using the computer to finish one of his court filings, and taunted him, intending to invoke an aggressive response.  *Id.* ¶¶ 9-10.  For example, Plaintiff alleges that on November 16, 2012, he was in the law library drafting legal documents when Defendant Schwartz, with knowledge of Plaintiff's alleged impending filing deadlines, told him to "get off the computer."  *Id.* ¶ 25.  Plaintiff alleges that Defendant Schwartz again called a correctional officer to place him in segregation, but this time, the officer refused.  *Id.*  Plaintiff additionally alleges that on November 28, 2012, Defendant Schwartz refused Plaintiff's request to print out documents that he was planning to send to an appellate court.  *Id.* ¶¶ 10, 26.  Plaintiff alleges that on November 30, 2012, he was placed in segregation again for attempting to file a grievance against Defendant Schwartz, which alleged that she destroyed a complaint drafted by Plaintiff that named her as a defendant.  *Id.* ¶¶ 10, 27.

Plaintiff further alleges that on December 11, 2012, Defendant Bland improperly found Plaintiff guilty of disrupting the prison law library because Bland denied some of Plaintiff's witnesses the right to testify and intentionally misinterpreted statements made by witness David Veren ("Veren"), which, in part, led to Plaintiff's guilty verdict.  *Id.* ¶¶ 29-31; Veren's Witness Statement, [#107] at 41.[3]  Specifically, Plaintiff alleges that Defendant Bland interpreted Veren's statement that Plaintiff had mental health issues to support the

---

[3]  Plaintiff includes some exhibits as part of the complaint and some exhibits as separate attachments.  Veren's Witness Statement is located on page 41 of the Complaint and is labeled "EXHIBIT 8."  The Court will cite to Veren's Witness Statement as "[#107] at 41."

conclusion that Veren agreed with Defendant Schwartz's recollection of the library dispute and Plaintiff's impulsive behavioral problems. *Id.* ¶¶ 29-31. Plaintiff's Complaint includes Veren's witness statement, which alleges that Plaintiff "stood up" in the library and told Defendant Schwartz that he had a deadline and she asked him to sit down. The Veren Witness Statement further states that Plaintiff asked Defendant Schwartz if her denial of his legal material request was based on his pending lawsuit against her, and she then called officers to tell them that Plaintiff was being disruptive. Veren Witness Statement, [#107] at 41. The Veren Witness Statement further states that Plaintiff suffers from several serious mental disorders and that "[Plaintiff], while perhaps not acting within the strictest of guidelines expected of an inmate at BVMC, [acted in a way that was] typical of one who [is] in need of counseling and therapy, medication[,] and understanding." *Id.*

Plaintiff additionally alleges that Defendant Bland infringed on his copyrighted "property" and did not compensate him for publicly using it.[4] *Id.* ¶¶ 30-31, 79-81. Specifically, Plaintiff alleges that his "property" was unlawfully used by Defendants. *Id.* ¶¶ 78-83  He attaches a UCC financial statement, verified affidavit of truthful ownership of property, and notice of reservation of his rights to his Complaint. *Id.* ¶¶ 74-79; *Compl.*, *Ex. 1* [#107-1] at 1-7. He also alleges that Defendant Bland improperly extended Plaintiff's sentence, which resulted in increased profit for CDOC. *Id.* ¶¶ 31, 79-81. Finally, Plaintiff

---

[4] It is not clear what Plaintiff considers his "property" to be. Plaintiff alleges that he is "the Secured Party/Creditor/Grantor of the Debtor JAMES FAIRCLOTH©:ENS LEGIS." *Fourth Am. Compl.* [#107] ¶ 75. He also alleges that as the secured party, he has "a priority interest in protecting the property and property right(s) of both the debtor and the Secured Party." *Id.* ¶ 76. He attaches a UCC financing statement and an affidavit of truth and fact in support of ownership of property claim, which allege that the actual value of the property is estimated to be $500,000.00 per each individual use by Defendants. *Compl., Ex. 3* [#107-1] at 4-6. None of this information assists in identifying the alleged copyrighted property at issue.

alleges that both Defendants engaged in a civil conspiracy by denying Plaintiff the ability to present all of his witnesses during the internal grievance procedure, access to the law library, and an impartial adjudicative process.  *Id.* ¶¶ 83-93.

## II. Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction.  The determination of a court's jurisdiction over the subject is a threshold question of law.  *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).  The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  If at any time, the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action.  Fed. R. Civ. P. 12(h)(3);  *Arbaugh*, 546 U.S. at 506.  A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings.  *Id.* at 1003.

### B.    Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v.*

*McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations.") (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *Iqbal*, 556 U.S. at 678.

## C.    Plaintiff's Pro Se Status

Plaintiff is appearing pro se.  When considering Plaintiff's Complaint and Response, the Court is mindful that it must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972);  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a pro se litigant's advocate, nor should it "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## D.    Deference to Prison Officials

"[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981) (citations omitted).  Accordingly, courts should give deference to the decisions related to safety made by federal prison officials.  *See Sandin v. Conner*, 515 U.S. 472, 482-483 (1995).  Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security.  *Bell v. Wolfish*, 441 U.S. 520 (1979).

### III.   Analysis

**A.     Eleventh Amendment**

Defendants first raise the issue of Eleventh Amendment immunity.   *Motion* [#115]

at 4-5.  This challenges the court's subject matter jurisdiction.  *Robinson v. Kansas*, 295

F.3d 1183, 1188 (10th Cir. 2002).  The doctrine of Eleventh Amendment immunity protects

states and their agents from suit when acting in their official capacities. *Fent v. Okla. Water*

*Res. Bd.*, 235 F.3d 553, 558-559 (10th Cir. 2000).   To the extent that Plaintiff sues

Defendants in their official capacities, "[s]uits against state officials in their official

capacit[ies] should be treated as suits against the state."  *Hafer v. Melo*, 502 U.S. 21, 25

(1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985));  *see also Duncan v. Gunter*,

15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacities

are not "persons" subject to suit under 42 U.S.C. § 1983).  Thus, pursuant to the Eleventh

Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by

a citizen of a state against the state itself, its agencies, or its officials in their official

capacities for monetary relief.  *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

Here, Defendants are employees of the Buena Vista Correctional Facility ("BVCF").

*Fourth Am. Compl.* [#107] at 2, 7.  Therefore, they are state officers.  Consequently, the

Court **recommends** that all of Plaintiff's official capacity claims against Defendants for

monetary relief **be dismissed without prejudice** for lack of subject matter jurisdiction on

the basis of Eleventh Amendment immunity.  *Brereton v. Bountiful City Corp.*, 434 F.3d

1213, 1216-1217 (10th Cir. 2006) (recognizing the established rule that "where the district

court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice"

because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

## B.    Qualified Immunity

Defendants additionally seek qualified immunity on Plaintiff's claims for monetary relief against them in their individual capacities. *Motion* [#115] at 17-18. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity offers protection both from trial and the other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When Defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.* The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim. *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6 (D. Colo. Jan. 17, 2103) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter."

9

*Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202;  *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).   Furthermore, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must have established the constitutional right. *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  In other words, there must be case authority in which a constitutional violation was found based upon similar conduct.  *See Callahan v. Millard Cnty.*, 494 F.2d 891, 903 (10th Cir. 2007).

1. **First Amendment Claims**

   a. **Constitutional Violation**

      i. **Meaningful Access to the Courts**

Plaintiff asserts two meaningful access to the courts claims based on (1) Defendant Schwartz's denial of access to the prison law library; and (2) Defendant Schwartz's alleged discouragement of his filing of a grievance and retaliation.

First, with respect to denial of access to the prison law library, Plaintiff alleges that he asked Defendant Schwartz for: (1) files to be transferred from the prison law library, *Fourth Am. Compl.* [#107] ¶ 3; (2) access to "State Rev. Stat. Manuals for 2012", *id.* ¶¶ 3, 19; (3) computer access to finish typing "TRO/injunction papers", *id.* ¶ 25; and (4) the ability to print out documents to send to the Court of Appeals, *id.* ¶¶ 26-27.  Plaintiff alleges that Defendant Schwartz replied to these requests by telling Plaintiff to "get off the computer,"

that "it'd behoove [him] not to oppose [her] in any way[,] shape[,] or form," and that he was to leave the law library. *Id.* ¶¶ 18-19, 25-27. Plaintiff further alleges that Defendant Schwartz on multiple occasions told correctional officers that Plaintiff was being disruptive, which led to placements in administrative segregation. *Id.* ¶¶ 6, 9-10, 21-22. Defendants argue that Plaintiff has a right of "access to the courts," not "access to a law library," and accordingly, these events did not deprive him of that right. *Motion* [#115] at 11. Alternatively, Defendants allege that even if Plaintiff had a right to access the library, that right could be infringed because of the prison's legitimate penological interest in security. *Id.* at 11-12.

Inmates have the right to obtain meaningful access to the courts to pursue constitutional claims. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). However, restricted access to the law library is not a per se denial of access to the courts. *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978). Prison regulations which reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of legal papers do not transgress the constitutionally protected rights so long as the regulations do not frustrate access to the courts. *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d. Cir. 1970). In fact, the adequacy of a prison law library is only one factor in the totality of all factors bearing on an inmate's access to the courts which should be considered. *Twyman*, 584 F.2d at 357.

To state a claim for denial of access to the courts, an inmate must show that he suffered an injury caused by "shortcomings in the library or legal assistance program." *Lewis*, 518 U.S. at 351, 354-355; *accord Wardell v. Duncan*, 470 F.3d 954 (10th Cir.2006). In order to satisfy the actual injury requirement, the plaintiff must show that, by denying

plaintiff access to the law library, prison officials frustrated or impeded the plaintiff's ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition, or a civil rights claim pursuant to § 1983. *Lewis*, 518 U.S. at 351, 354-55; *Baird v. Corr. Corp. of Am.*, No. 10-CV-00537-ZLW-CBS, 2011 WL 742468, at *6 (D. Colo. Jan. 5, 2011); *see also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."). "[T]he injury only occurs when prisoners are prevented from attacking their sentences or challenging the conditions of their confinement." *Lewis*, 518 U.S. at 356. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

Here, Plaintiff alleges that he was forced to leave the library (on October 10, 2012 and October 23, 2012), denied a request to transfer files from the law library (on October 10, 2012), denied access to a statutory text (on October 10, 2012), denied computer access (on November 16, 2012 and November 28, 2012), and denied the ability to print out legal documents (on November 28, 2012). However, Plaintiff's allegations of events that occurred on four different days do not support the conclusion that he was prevented from filing legal claims. For example, Plaintiff does not allege that he was completely banned from the prison law library as opposed to merely forced out on a handful of days. He also does not allege that he was prevented from handwriting his legal briefs. *Twyman*, 584 F.2d at 358 (citing *Stubblefield v. Henderson*, 475 F.2d 26 (5th Cir. 1973) (holding that access to the courts does not include a federally protected right to have one's pleadings typed); *Tarlton v. Henderson*, 467 F.2d 200 (5th Cir. 1972) (holding that pro se prisoner cases are not prejudiced by the filing of handwritten briefs); *Hampton v. Schauer*, 361 F. Supp. 641,

642-644 (D. Colo. 1973)).   Plaintiff alleges that he was denied the "State Rev. Stat. Manuals for 2012," but fails to allege how this limitation on his legal research has impeded his access to the courts.   *See Austin v. Lovinger*, No. 09-cv-01899-MSK-KLM, 2009 WL 3836348, at *1 (D. Colo. Nov. 12, 2009) (denying inmate's request for access to a legal research database because he failed to allege that the "limitation[ ] on his ability to perform legal research [hindered] his access to the courts").   Plaintiff here was not entitled to unrestricted library, computer, and printing access, and he fails to allege that he was denied the ability to handwrite his legal claims and mail them to a court.   Therefore, the Court finds that Plaintiff's allegations regarding Defendant Schwartz's alleged denial of Plaintiff's library access on a limited number of days do not sufficiently state a claim under the First Amendment for denial of meaningful access to the courts.

Next, Plaintiff alleges that he was denied meaningful access to the courts because of Defendant Schwartz's alleged discouragement of his filing of a grievance and retaliation. Plaintiff alleges that on October 10, 2012, Defendant Schwartz told him, "Mr. Faircloth, I am very aware of your grievance [and] complaint against Ms. Smith at C.T.C.F., and, while you are here at BVCF you will find that any grievances [or] complaints you may find yourself having here with the service provided by my standards will not get very far . . . as we do not like inmates that tell on staff members." *Fourth Am. Compl.* [#107] ¶ 18.  Plaintiff alleges that in retaliation for his grievance filing, potential grievance filing, and legal material request, Defendant Schwartz: (1) forced Plaintiff to get off the computer and leave the library, *id.* ¶¶ 4-7, 9-10, 13-14; (2) told him that "[his] grievance about Ms. Smith [was] denied as [Defendant Schwartz] deemed it to be moot and [it would] do [Plaintiff] no good to push it any further, as no one believes anything prisoners say anyway! . . . [O]ther than

13

that, [he would] find that [Defendant Schwartz was familiar with Plaintiff's] bad reputation for grievances . . . [I]t'd behoove [Plaintiff] not to oppose [Defendant Schwartz] in any way[,] shape[,] or form", *id.* ¶ 18; and (3) reported to correctional officers that Plaintiff was being a threat, which resulted in the correctional officers placing Plaintiff in segregation, *id.* ¶¶ 4-7, 24-25, 27, 36.

Plaintiff also alleges that Defendant Schwartz denied him legal materials and harassed him on four different occasions, all in retaliation for filing a grievance against Correctional Officer Smith.  *Id.* ¶¶ 9, 13, 41.  He alleges that on November 30, 2012, Defendant Schwartz placed him in segregation after Plaintiff tried to file a grievance against her alleging that she destroyed a legal document, which named her as a defendant in a suit brought by Plaintiff.  *Id.* ¶¶ 10, 26, 40-43.  Plaintiff alleges that he was writing an affidavit to an appellate court describing Defendant Schwartz's interference with his "filings to that Court" when she again summoned a security guard to come over, handcuff Plaintiff, and send him to segregation.  *Id.* ¶¶ 26-27.

Access to the courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances.  *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir.1985).  Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief pursuant to 42 U.S.C. § 1997e, an allegation that a prisoner was punished for filing such a grievance is sufficient to state a claim for both denial of access to the courts and violation of the First Amendment.  *See id.*  ("It is also one aspect of the First Amendment right to petition the government for redress of grievances.").  Simply stated, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the

14

courts." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948; *Laratta v. Raemisch*, No. 12-cv-02079-MSK-KMT, 2014 WL 1237880, at *12 (D. Colo. Mar. 26, 2014).

With respect to the discouraging of a grievance, an inmate who is threatened with bodily harm to discourage him or her from pursuing legal redress may maintain an action under § 1983. *See McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir. 1984) (remanding dismissal of complaint where the defendant threatened to revoke the plaintiff's probation if he filed a civil rights action, because "the right of access to the courts is constitutionally protected"); *see also* 1 Civ. Actions Against State & Loc. Gov't § 7:64. Similarly, prisons cannot encourage the discriminatory harassment of inmates who take their grievances to court. *See Penrod v. Zavares*, 94 F.3d 1399, 1404 (10th Cir. 1996). A defendant who interferes with a prisoner's right of access to the courts is liable under § 1983 even if the prisoner was not prevented from filing suit. *See* 1 Civ. Actions Against State & Loc. Gov't § 7:64. The Court here finds that because Defendant Schwartz allegedly told Plaintiff not to file a grievance against her and allegedly harassed Plaintiff on multiple occasions, Plaintiff sufficiently alleges that she intentionally interfered with Plaintiff's right to access the courts. *See Penrod*, 94 F.3d at 1404 (holding, where the plaintiff alleged that the defendants forced him to choose between hygiene items and pursuing grievances, seized his legal materials, and placed him in administrative segregation in retaliation for bringing suit against prison officials, defendants were not entitled to qualified immunity because plaintiff sufficiently alleged a meaningful access to the courts claim). Therefore, the Court finds that Plaintiff has sufficiently alleged a First Amendment claim against Defendant

15

Schwartz for violation of his right to meaningful access to the courts.

## ii.   Retaliation

Plaintiff asserts a retaliation claim against Defendant Schwartz for her alleged campaign of harassment toward Plaintiff after he went "to file a grievance against" Defendant Schwartz.

"[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate: (1) he was engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS, 2008 WL 280839, at *7 (D.Colo. Jan. 31, 2008) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir.2004)). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Id.* For the purposes of a Motion to Dismiss, a Plaintiff must sufficiently allege the elements of the claim. *Coyle v. Theodore Laurence, P.A.*, No. 13-cv-02872-CMA-CBS, 2014 WL 2566293, at *3 (D. Colo. Jun. 5, 2014).

Plaintiff's conduct in filing a grievance is protected conduct, and thus satisfies the first element of a First Amendment retaliation claim. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) (holding that prison officials may not retaliate against prisoners for filing lawsuits or petitioning for redress of grievances); *Nordgren*, 762 F.2d at 853; *Laratta*, 2014 WL 1237880. Second, Plaintiff alleges that he suffered adverse action when Defendant Schwartz authorized correctional officers to place him in segregation and harass him. *Quintana v. Edmond*, No. 06-cv-01187, 2008 WL 3539265, at *11 (D. Colo. Aug. 12, 2008) (holding that placement in administrative segregation is an "adverse action"). Third, "[a]n inmate claiming retaliation must allege specific facts [supporting] retaliation because

16

of the exercise of the prisoner's constitutional rights." *Peterson*, 149 F.3d at 1144 (citation omitted).  That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir.1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").  The courts have recognized that, regarding retaliation claims, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation.  *See Maschner*, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him–circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); *Laratta*, 2014 WL 1237880, at * 13 (D. Colo. Mar. 26, 2014).

Here, Plaintiff alleges that he went "to file a grievance against" Defendant Schwartz on October 10, 2012 and almost immediately afterward, she initiated a "campaign of harassment" against him, including placements in segregation and denials of prison law library capabilities. *Fourth Am. Compl.* [#107] at ¶ 44. Plaintiff also alleges that Defendant Schwartz told him that it was not in his best interest to file a grievance against her.  *Id.* ¶ 18. These allegations sufficiently allege that Defendant Schwartz retaliated against Plaintiff for engaging in a protected activity.  *See Quintana*, 2008 WL 3539265, at *11 (holding that the plaintiff sufficiently alleged retaliation where he was placed in administrative segregation two weeks after filing three grievances against the defendants); *see also Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that

17

a one and one-half month period between protected activity and a negative action may establish causation).  Therefore, the Court finds that Plaintiff has sufficiently alleged a First Amendment retaliation claim against Defendant Schwartz.

### b.   Clearly Established Right

Because Plaintiff has sufficiently alleged two First Amendment claims (meaningful access to the courts and retaliation) against Defendant Schwartz, he must also meet his burden of alleging that the rights were clearly established.  *Guffey v. Wyatt*, 18 F.3d 869, 871 (10thCir. 1994).  Whether a right was clearly established must be considered in light of the specific context of the case, not as a broad general proposition.  *See Saucier*, 533 at 201.  There can be no doubt that at the time of the alleged incidents it was clearly established that "[p]rison officials do not have the discretion to punish an inmate for exercising his first amendment rights" by taking adverse action against him.  *Frazier v. Dubois*, 922 F.2d 560, 560-561 (10th Cir. 1990);  *Penrod*, 94 F.3d at 1405 ("[T]he jurisprudence prohibiting retaliatory acts against prisoners for reporting grievances is well-established.").

Additionally, at the time of the alleged incidents, the law was clearly established that "a showing that a prosecution was brought in retaliation for, or to discourage, the exercise of constitutional rights 'will justify an injunction regardless of whether valid convictions conceivably could be obtained." *Phelps v. Hamilton*, 59 F.3d 1058, n.14 (citing *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981)).  Therefore, the Court finds that Plaintiff has sufficiently alleged  facts to support two constitutional violations of clearly established law.  Accordingly, the Court finds that Defendant Schwartz is not entitled to qualified immunity on Plaintiff's First Amendment claims for meaningful access to the courts and retaliation.

*See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1308 (D. Colo. 2009) (holding that because the plaintiff sufficiently alleged a constitutional violation of clearly established law, the defendants were not entitled to qualified immunity).  The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's First Amendment meaningful access to the courts (based on discouraging filing of a grievance) and retaliation claims against Defendant Schwartz in her individual capacity for monetary damages, the Motion should **be denied**.

### 2.      Eighth Amendment Claims

Plaintiff asserts Eighth Amendment claims against Defendants in connection with his placement in segregation.  Specifically, he asserts his claims based on three theories: (1) Defendants were deliberately indifferent to his medical condition; (2) he was placed in administrative segregation; and (3) he did not receive an impartial hearing as part of the prison's internal grievance procedure.

### a.      Deliberate Indifference

Plaintiff alleges that on October 10, 2012 and November 30, 2012, Defendant Schwartz called for "a responder[] to come and handcuff [Plaintiff] and [place him in] segregation" instead of seeking medical treatment for him.  *Id.* ¶ 27.  Plaintiff alleges that Defendant exacerbated his "pre-existing conditions of mental health disorders and concentration due to unnecessary stress" and that he has "anxiety disorder," "paranoia that persons of the government really are out to get him," "PTSD," and "ADHD learning disability."  *Id.* ¶¶ 45, 51.  Plaintiff argues that Defendant Schwartz's alleged action in exacerbating his conditions constituted "deliberate indifference" and violated his rights

pursuant to the Eighth Amendment.

The Constitution does not mandate comfortable prisons, *Rhodes*, 452 U.S. at 349, but neither does it permit inhumane ones, and it is settled law that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments that "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104. (quoting *Gregg*, 428 U.S. at 173). To sufficiently allege "deliberate indifference," a prisoner must allege that (1) he was deprived of a medical need that is objectively "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

Turning first to the subjective component of the test, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Court examines whether Plaintiff sufficiently alleges that Defendant Schwartz was aware of Plaintiff's condition and whether her actions constituted "deliberate indifference" to Plaintiff's medical need. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835; *Hood v.*

20

*Prisoner Health Servs., Inc.*, No. 05-3198, 180 F.App'x 21, at *25 (10th Cir. 2006) (stating that negligent failure to provide medical care does not rise to "deliberate indifference to serious medical needs").   A prison official is not deliberately indifferent to an inmate's medical needs unless he "knows of [and] disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Here, while Plaintiff's allegations may arguably support the conclusion that Defendant Schwartz did not care about Plaintiff's medical conditions, Plaintiff fails to allege that she drew an the inference between placing Plaintiff in segregation and a substantial risk of harm to his health or safety.   Accordingly, the Court finds that Plaintiff fails to sufficiently allege that Defendant Schwartz violated Plaintiff's Eighth Amendment rights by being "deliberately indifferent" to Plaintiff's medical needs.   *See Sawyer*, 2014 WL 2061260, at *1 (affirming the district court's judgment that the plaintiff failed to sufficiently allege deliberate indifference because the allegations failed to indicate that hospital staff knew of and disregarded a substantial risk of serious harm).   Because Plaintiff fails to allege facts that would meet the subjective component of the test, the Court does not address the objective component.

### b.   Administrative Segregation

Construing the Complaint liberally, as the Court must, Plaintiff next argues that his administrative segregation placement in and of itself constituted cruel and unusual punishment in violation of the Eighth Amendment.   Putting aside the fact that Plaintiff has failed to allege that either Defendant Schwartz or Defendant Bland made the decision to place him in administrative segregation, insofar as he alleges that administrative

segregation in and of itself constitutes cruel and unusual punishment, his allegation fails. Administrative segregation by itself does not constitute cruel and unusual punishment. *Sandin v. Conner*, 515 U.S. 472, 485-487 (1995) (holding that the imposition of disciplinary segregation, which mirrored the conditions imposed upon inmates in administrative segregation, did not implicate a liberty interest or entitle the plaintiff to procedural due process protection); *Grady v. Edmonds*, No. 06-cv-01612-DME-PAC, 2007 WL 2986167, at *8 (D. Colo. Oct. 10, 2007) (citing *Sandin*, 515 U.S. at 485-487).  This is because inmates "should reasonably anticipate receiving [placement in administrative segregation] at some point in their incarceration."  *See Clemons v. McKune*, 93-3357-SAC, 1996 WL 596737, at *7 (D. Kan. Sept. 10, 1996).

Therefore, because the imposition of administrative segregation alone does not rise to the level of a cruel and unusual punishment, Plaintiff fails to sufficiently allege that Defendant Schwartz violated his Eighth Amendment right by authorizing it.  *See Gandy v. Ortiz,* 122 F. App'x 421, 423 (10th Cir. 2005) (holding that "the imposition of disciplinary segregation that does not itself inevitably affect the duration of the prisoner's sentence does not implicate a liberty interest entitled to procedural due process protection").

### c.    Impartial Hearing

Plaintiff alleges that Defendant Bland violated his Eighth Amendment rights by allegedly failing to remain impartial at Plaintiff's hearing.  *Fourth Am. Compl.* [#107] ¶ 57. Plaintiff alleges that Defendant Bland denied Plaintiff the ability to present a witness that would have testified about Plaintiff's ADA rights being violated.  *Id.*  This allegation fails to sufficiently allege that Defendant Bland subjected Plaintiff to cruel and unusual punishment because it more accurately deals with a potential due process violation, rather than an

Eighth Amendment violation.[5]  Accordingly, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment individual capacity claims against them for monetary damages and **recommends** these claims **be dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").  The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's Eighth Amendment claims against Defendants in their individual capacities for monetary damages, the Motion should **be granted**.

### 3.    Fourteenth Amendment Claims

Plaintiff asserts Fourteenth Amendment claims against Defendants for violation of his due process and equal protection rights.

#### a.    Due Process

Plaintiff asserts his due process claims based on Defendant Schwartz's allegedly false report against him and both Defendants' alleged denial of an impartial hearing.  To state a Fourteenth Amendment due process claim, a plaintiff must allege facts supporting two elements.  *See Veile v. Martinson*, 258 F.3d 1180, 1184-1185 (10th Cir. 2001);  *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6-7 (D. Colo. Jan. 17, 2013); *Obando v. Zavares*, 2012 WL 5878209, at *18 (D. Colo. Oct. 30, 2012).  First, he must allege that he possesses a protected liberty or property interest.  *See Veile*, 258 F.3d at

---

[5]  Failing to remain impartial would implicate Plaintiff's right to a reasonable level of process before being subjected to segregation.  Plaintiff alleges that Defendants failed to conduct an impartial hearing, which relates to the hearing process, not the decision or punishment imposed.

1184-1185; *Sarno*, 2013 WL 1151818, at *6-7.  Second, he must allege that he was not afforded the appropriate level of process.  *See Veile*, 258 F.3d at 1184-1185; *Sarno*, 2013 WL 1151818, at *6-7.  Here, Defendants argue that Plaintiff's Complaint fails to sufficiently allege that he has a property or liberty interest in being free from placement in administrative segregation preceding a disciplinary hearing.  *See Motion* [#115] at 10 (citing *Sandin*, 515 U.S. at 486).

Liberty interests "are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974).   In considering whether Plaintiff's allegations trigger a liberty interest, the Court must examine the conditions of confinement before determining whether such conditions impose an atypical and significant hardship on the inmate.  *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-1226) (10th Cir. 2002)).

### i.     False Report

Plaintiff alleges that Defendant Schwartz knowingly filed a false report against Plaintiff resulting in a wrongful and arbitrary segregation placement that violated his due process rights.  Specifically, Plaintiff alleges that Defendant Schwartz: (1) called Lieutenant

24

Hysjulien and falsely reported that the Plaintiff was a threat, *id.* ¶¶ 14, 25, 48; (2) caused the Plaintiff to suffer 14 days in solitary confinement while knowing that he did not commit the offense he was being disciplined for, *id.* ¶¶ 28, 38-39, 90; (3) destroyed Plaintiff's legal papers which denied him due process, *id.* ¶ 37; (4) retaliated against Plaintiff after he requested access to the library, *id.* ¶¶ 9, 10, 13, 26-27, 40-43; and (5) taunted him to provoke his exercise of protected speech which resulted in placement in administrative segregation, *id.* ¶¶ 9, 13, 14, 59-60. As a result, Plaintiff alleges he also lost his status as "Minimum Restricted," which offered him more freedoms and a better prison life. *Id.*

The Supreme Court has noted that, if the purpose is punishment, "[s]egregation of a prisoner without a prior hearing may violate due process if the postponement of procedural protections is not justified by apprehended emergency conditions." *Hughes v. Rowe,* 449 U.S. 5, 11 (1980). If the segregation is non-punitive in nature and is done for administrative or supervisory reasons, the inmate has no due process rights prior to administrative confinement unless prison regulations provide him with a liberty interest. *Hewitt v. Helms,* 459 U.S. 460, 476 (1983). Here, Plaintiff does not specifically allege facts supporting the conclusion that emergency conditions did not exist. He alleges that Defendant Schwartz's report was false, but only additionally alleges that she called a correctional officer over because Plaintiff was a "threat when no threat ever occurred." *Frazier v. Dubois*, 922 F.2d 560, 563 (10th Cir. 1990). Plaintiff alleges his subjective determination that "no threat ever occurred," but fails to allege any facts to support that conclusion such as that he was sitting quietly at a library computer or not making disruptive comments to the prison staff.

Additionally, as noted above, due process requires only that there be some evidence

to support the decision of the hearing officer.  "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-456.  Thus, a prison disciplinary conviction can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (quoting *Hill*, 472 U.S. at 457).  An incident report alone may constitute "some evidence" sufficient to support the disciplinary hearing officer's decision. *See Ruelas v. Zuercher*, 240 F.App'x. 796, 797 (10th Cir. 2007); *Longstreth v. Franklin*, 240 F.App'x. 264, 267 (10th Cir. 2007); *Wright v. Daniels*, No. 13-CV-01430-RBJ, 2013 WL 5937991 (D. Colo. Nov. 6, 2013).

Plaintiff's own Complaint alleges that inmate David Veren made a statement that Plaintiff stood up and told Defendant Schwartz "I have a deadline" in response to her refusal to provide Plaintiff with a photocopy.  Veren Witness Statement [#107] at 41.  After Defendant Schwartz asked Plaintiff to sit down, Plaintiff alleges that David Veren stated that Plaintiff instead responded by asking her if her denial of his request was based on his pending lawsuit against her.  Accordingly, Plaintiff's own Complaint alleges some evidence supporting Defendant Schwartz's determination that Plaintiff was being disruptive.  *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453 (1985) (holding that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board").  Therefore, Plaintiff's allegations show that Defendant Schwartz's first report was not created out of thin air.  *See Ruelas*, 240 F.App'x. at 797; *see also Keeler v. Pea*, 782 F. Supp. 42, 45 (D.S.C. 1992) (granting the defendant's motion

for summary judgment where "some" evidence clearly existed on which the disciplinary committee could have reached findings of guilty as to all charges). While an incident report alone may constitute "some evidence" sufficient to support the disciplinary hearing officer's decision, here Plaintiff's own allegations support the disciplinary hearing officer's decision. *See Ruelas*, 240 F.App'x. at 797 (holding that an incident report constitutes "some evidence" of guilt).

Furthermore, not all state actions taken for punitive reasons implicate a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* at 485. Even if a state regulation were to be construed as creating due process rights prior to the imposition of discipline, an inmate may only bring an action to redress conduct that "will inevitably affect" the duration of his confinement, cause a significant deprivation of a federally-protected right, or impose on the inmate an "atypical and significant hardship" in relation to the ordinary incidents of prison life. *Id.* at 481-482. In general, judicial review of prison disciplinary actions is not desirable, because the discipline of incarcerated individuals "effectuates prison management and prisoner rehabilitative goals," and "falls within the expected parameters of the sentence imposed by a court of law." *Id.* at 485. Prison disciplinary actions do not involve a reviewable issue if the punitive action taken involves a matter which is reasonably within the sentence imposed by the sentencing court, and is not "atypical of the prison experience." *Id.*

Here, the placement of Plaintiff in administrative segregation preceding a disciplinary hearing did "not present the type of atypical, significant deprivation in which a state might

conceivably create a liberty interest." *Sandin*, 515 U.S. at 486; *Williams v. Ramos*, 71 F.3d 1246 (7th Cir. 1995) (holding that a prison inmate who was held in disciplinary segregation for 19 days did not establish a liberty interest sufficient to invoke a right to due process because his confinement was not significantly more onerous than life in the general prison population); *Dickens v. Taylor*, 2006 WL 3190344 (D. Del. 2006) (dismissing § 1983 claims, holding that there is no due process liberty interest in an inmate's classification where he alleged that an officer told a guard to write a false report against him and permitted the guard to taunt the prisoner and bump him while he was handcuffed and shackled). Because of Plaintiff's failure to allege facts supporting a conclusion that Defendant Schwartz made a false report, the existence of some alleged evidence of Plaintiff's disruptions, and Plaintiff's failure to allege a liberty interest, the Court finds that Plaintiff fails to sufficiently allege a due process claim against Defendant Schwartz for making a false report.

### ii.    Impartial Hearing

Plaintiff also asserts a due process claim based on allegations that Defendant Bland abused his discretion in the disciplinary hearing and ordered a punitive sanction without due process, which subjected Plaintiff to cruel and unusual punishment. *Fourth Am. Compl.* [#107] ¶¶ 26-29. Additionally, Plaintiff alleges that Defendant Bland violated Plaintiff's due process rights by failing to remain impartial about the charges against him during Plaintiff's hearing and refusing to review evidence of an ADA violation in connection with the charges against Plaintiff. *Id.* ¶ 57.

Plaintiff further alleges that Defendant Bland denied Plaintiff a fair hearing by not allowing other witnesses supportive of Plaintiff's position to testify, which would have

28

rebutted Defendant Schwartz's allegedly false report.  *Id.* ¶ 63.  Plaintiff avers that Defendant Bland intentionally misconstrued a statement by witness David Veren that Plaintiff's mental health issues showed impulsive behavioral problems.  *Id.* ¶¶ 29, 63, 66. He also maintains that Defendant Bland incorrectly interpreted David Veren's statement to show that Veren was in agreement with Defendant Schwartz's interpretation of the events including Plaintiff's allegedly loud, disruptive behavior.  *Id.* ¶ 63.  Plaintiff further alleges that Defendant Bland abused his discretion by ignoring the prison's administrative regulation procedures.  *Id.* ¶ 64.  Plaintiff additionally alleges that Defendant Bland improperly extended Plaintiff's sentence, resulting in increased "profit" for the CDOC.[6]  *Id.* ¶¶ 31, 79-81.  Plaintiff avers that Sergeant Medford stated to Plaintiff that "Lt. Bland will always find in favor for Celia Schwartz when he can and has allowed her to influence the hearings board in the past, in cases involving other inmates/offenders."  *Id.* ¶ 69.  Sergeant Medford also allegedly agreed that witnesses should have been allowed to determine the veracity of the "loudly arguing" claims in Defendant Schwartz's report.  *Id.* ¶ 70.  As a result of this conduct, Plaintiff alleges his due process rights were violated and that he suffered anxiety and was denied recreation time in the prison.  *Id.* ¶ 73.

The Court concludes that Plaintiff does not sufficiently allege a due process claim based on an allegedly biased hearing.  *See Veile*, 258 F.3d at 1184-1185; *Sarno*, 2013 WL 1151818, at *6-7.  Plaintiff predominantly alleges his own and Sergeant Medford's legal conclusions that Defendant Bland is biased, as opposed to facts supporting a due process

---

[6]  Plaintiff fails to allege any facts to support the notion that the Colorado Department of Corrections is a profit-making organization, or that its alleged profits are increased when prisoners' sentences are extended.

violation.  Additionally, Plaintiff does not allege that Defendant Bland denied him the ability to call all witnesses.  *Ponte v. Real*, 471 U.S. 491 (1985) ("A prisoner is not entitled to all the rights afforded a criminal defendant.");   *Fox v. Coughlin*, 893 F.2d 475, 475, 478 (2d Cir. 1990) (holding that prison did not deprive inmate of clearly established rights by refusing to assist him in preparation of his case or to call all witnesses he desired to have appear); *Langton v. Berman*, 667 F.2d 231, 231 (1st Cir. 1981) (holding that "prisoner was not deprived of his right to due process with respect to disciplinary hearing even though four prison officials and seven inmates were not allowed to be called as witnesses").  In fact, Plaintiff alleges that he presented some witnesses in support of his position at the hearing.  *See Williams v. Addison*, No. CIV-06-1364-R, 2009 WL 1752172, at *1 (W.D. Okla. Jun. 19, 2009) ("[A] prisoner is not entitled to the full panoply of rights afforded to a defendant in a criminal proceeding. . . . Rather, due process . . . requires . . . the opportunity to be heard and present evidence."); *Bushman v. Warden, USP Leavenworth*, No. 90-3494-RDR, 1993 WL 100316, at *1 (D. Kan. Mar. 10, 1993) ("Due process requires that the inmate receive . . . an opportunity to call witnesses and present documentary evidence.").  Accordingly, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment Due Process claims against Defendants in their individual capacities for monetary damages and **recommends** that these claims **be dismissed without prejudice**.  *Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").  The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's Fourteenth Amendment Due

Process claims against Defendants in their individual capacities for monetary damages, the Motion should **be granted**.

> ### b.      Equal Protection

Plaintiff alleges that Defendants violated his Fourteenth Amendment Equal Protection rights by failing to provide the benefits of the law library equally to him and that they abused their discretion by finding Plaintiff guilty of disrupting the library despite no evidence supporting that conclusion.  *Id.* ¶¶ 60-61, 63.

An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985);  *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991).  Plaintiff bears the burden of alleging discriminatory intent.  To meet that burden, a plaintiff must provide allegations demonstrating that a discriminatory purpose was a motivating factor in the decision attacked by the complaint.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

When a plaintiff does not allege that he was treated differently because he is a member of a suspect class, such as a protected racial, ethnic or religious group, he must allege sufficient facts to support that the distinction between himself and other inmates was

not reasonably related to some legitimate penological purpose. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994); *Hover v. Hickenlooper*, No. 13-cv-01482-BNB, 2013 WL 3353889, at *3 (D. Colo. July 3, 2013). Intentionally disparate treatment of similarly-situated inmates is acceptable under the equal protection clause unless there was no rational basis for the practice. *Vazquez v. Cooper*, 862 F.2d 250, 251-252 (10th Cir. 1988).

Plaintiff alleges that he was discriminated against based on his alleged mental health problems. *Compl.* [#107] ¶¶ 45, 51, 54, 59-60. "[D]isability is not a 'suspect classification' for equal-protection purposes." *Whitington v. Moschetti*, 423 F.App'x. 767, 770 (10th Cir. 2011); *see, e.g., Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005). *Brown v. Berthoud Fire Prot. Dist.*, No. 12-CV-03028-REB-KLM, 2013 WL 6152407, at *4-5 (D. Colo. Nov. 22, 2013). Because Plaintiff does not allege that he is a member of a suspect class, he must allege facts sufficient to support the conclusion that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. *See Turner*, 482 U.S. at 89; *Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding that "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential" and considering only whether the treatment was "reasonably related to a legitimate penological purpose").

Here, Plaintiff fails to allege that Defendant Schwartz was motivated by a particular discriminatory purpose when she removed him from the library or placed him in segregation. Plaintiff also fails to allege facts supporting the conclusion that inmates similarly situated to him–that is, those who allegedly committed disciplinary infractions in

the library–were treated differently. Therefore, because Plaintiff fails to allege that he is "similarly situated" to inmates who were treated differently from him and that Defendants acted with a discriminatory motive, he fails to sufficiently allege that his equal protection rights were violated. *Fogle*, 435 F.3d at 1261; *Milligan v. Archuleta*, No. 11-cv-00250, 2013 WL 627143, at *6-7 (D. Colo. Jan. 30, 2013) (holding that plaintiff failed to allege that his equal protection rights were violated where he did not sufficiently allege a material similarity between himself and the other inmates); *Phillips v. Steinbeck*, No.06-cv-02569-WDM-KLM, 2008 WL 821789, at *17 (D. Colo. Mar. 26, 2008) (dismissing plaintiff's equal protection claims where he failed to allege any facts suggesting that he was a member of a suspect classification, he was treated differently from other similarly-situated prisoners, or defendants' actions did not serve a legitimate penological purpose). Accordingly, Defendants' conduct is protected by the doctrine of qualified immunity on these claims and the Court **recommends** that Plaintiff's equal protection claims for monetary damages against Defendants in their individual capacities be **dismissed without prejudice**. *Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues"). The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's Fourteenth Amendment Equal Protection claims against Defendants in their individual capacities for monetary damages, the Motion should **be granted**.

### 4.    Copyright Infringement Claims

Plaintiff alleges that Defendants infringed on his copyrighted property and did not

compensate him for publicly using his private property.  *Id.* ¶¶ 30-31, 79-81.  Plaintiff alleges that Defendants caused him damages, including the unlawful conversion of his property, in the amount of $500,000.00 per use of the copyrighted property.  *Id.* ¶ 81  Plaintiff essentially alleges that his property was unlawfully used by Defendants, citing a financial statement, verified affidavit of truth in support of ownership of property claim, and notice of reservation of his rights.  *See Fourth Am. Compl.* [#107] ¶¶ 74-79; UCC Finance Statement [#107-1] at 2-3; Affidavit of Truth in Support of Ownership of Property Claim [#107-1] at 4-7.[7]

Federal courts have jurisdiction over copyright infringement matters only if the putative plaintiff has registered a copyright in accordance with the Copyright Act.  *See* 17 U.S.C. § 411(a);  *see also La Resolana Architects*, 416 F.3d at 1200 (noting that "[t]he most important step necessary before instituting an infringement action is registering one's copyright").  Here, not only does Plaintiff's Complaint fail to identify the alleged copyrighted property with the requisite degree of clarity, but it fails to allege that he completed the required registration for the unknown property.  For example, Plaintiff alleges that he is "the Secured Party/Creditor/Grantor of the Debtor JAMES FAIRCLOTH(C):ENS LEGIS," but does not explain what the capitalized words mean, does not identify the alleged copyrighted property, and does not assert that he has registered for copyright protection.  *Lewis v. Rio Grande Sun*, 345 F. App'x 357, 358 (10th Cir. 2009).

Therefore, Defendants are entitled to qualified immunity on Plaintiff's copyright

---

[7] Plaintiff's Complaint refers to attachments as "Finance Statement" and "Affidavit of Truth and Fact in Support of Ownership of Property Claim."  *See Fourth Am. Compl.* [#107] ¶ 77.  The Court refers to these attachments as "UCC Finance Statement" and "Affidavit of Truth in Support of Ownership of Property Claim," respectively.

infringement claim.   Accordingly, the Court **recommends** that Plaintiff's copyright infringement claim against Defendants in their individual capacities for monetary relief **be dismissed without prejudice**.  *Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").  The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's copyright infringement claims against Defendants in their individual capacities for monetary damages, the Motion should **be granted**.

### 5.      Civil Conspiracy Claims

Plaintiff alleges that Defendant Schwartz and Defendant Bland engaged in a civil conspiracy by denying witnesses the ability to testify at his disciplinary hearing about ADA violations or observations of Plaintiff's disability, which violated his ADA and due process rights.  *Fourth Am. Compl.* [#107] ¶¶ 83, 86-92.  Plaintiff alleges that these actions "conceal[ed] the misconduct of such denials and wrongful confinement punishments as a result of the [Plaintiff's] protected constitutional rights to grieve and oppose that said misconduct" and "mask[ed Defendants'] violations of [Plaintiff's] constitutional and ADA rights."[8]  *Id.* ¶ 83, 86-92.  Plaintiff alleges that both Defendants engaged in a conspiracy through their statements, denial of Plaintiff's access to the law library, and finding Plaintiff guilty of misconduct despite reliable contrary evidence.  *Id.*  Furthermore, Plaintiff alleges that the Defendants' rejection of witness testimony and exculpatory evidence that was contrary to the prison's position on Plaintiff's misconduct in the prison report constituted a

---

[8]  Plaintiff fails to explain what is meant by concealing the misconduct of such denials or masking violations of his rights.

conspiracy. *Id.* ¶¶ 86-87.

Plaintiff alleges that Defendant Schwartz knew that she was going to place the Plaintiff in segregation because she has a "vicious propensity" for removing prisoners from population every time security responds to an inmate situation. *Id.* ¶ 90. He also alleges that Defendants concealed and masked their violations of Plaintiff's constitutional rights and ADA discrimination laws. *Id.* ¶ 91. Finally, Plaintiff alleges that Sergeant Medford's statement supports a finding that Defendants engaged in a civil conspiracy. *Id.* ¶ 93.

The elements of a 42 U.S.C. § 1985(3) conspiracy claim are: (1) a civil conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir.1993). To meet the first element of a § 1985(3) claim and state a claim for civil conspiracy, Plaintiff "must allege specific facts showing agreement and concerted action among the defendants." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1988) (emphasis added). It is not enough for Plaintiff to merely state that Defendants engaged in a conspiracy. *See id.* ("Conclusory allegations of conspiracy are insufficient."); *Sieverding v. Colo. Bar Ass'n*, No. Civ. A.02-M-1950 (OES), 2003 WL 22400218, at *18 (D. Colo. Oct. 14, 2003) (holding that the plaintiffs' conclusory statements with regard to the existence of conspiracies surrounding every event on which they based their claims failed to allege specific facts that fulfilled the requirements of the elements of a claim for civil conspiracy and were "insufficient to state a claim"). In addition, 42 U.S.C. § 1985(3) only applies to "conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton*, 6 F.3d at 686 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971)). "The other 'class-based animus' language

36

of this requirement has been narrowly construed." *Id.* (citing *United Bd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1983). Finally, 42 U.S.C. § 1985(3) only applies to "conspiracies 'aimed at interfering with rights that are protected against private, as well as official encroachment.'" *Id.* (quoting *Scott*, 463 U.S. at 833).

The Court has construed Plaintiff's allegations liberally and in the light most favorable to him. However, Plaintiff's Complaint is completely devoid of any allegations that Defendants made an agreement and acted in concert or that the alleged conspiracy was motivated by "invidiously discriminatory animus." *Id.* The Court therefore finds that Plaintiff has not sufficiently alleged facts supporting the elements necessary to establish an entitlement to relief, and that Defendants are entitled to qualified immunity on Plaintiff's claims for civil conspiracy pursuant to 42 U.S.C. § 1985. Accordingly, the Court **recommends** that Plaintiff's civil conspiracy claims against Defendants in their individual capacities for monetary damages **be dismissed without prejudice**. *Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues"). The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's civil conspiracy claims against Defendants in their individual capacities for monetary damages, the Motion should **be granted**.

## C.   ADA Claim

Plaintiff alleges that Defendant Schwartz violated his rights pursuant to the ADA by intentionally provoking and taunting him in order to invoke a disruptive response and to provoke him to file a grievance against her. *Fourth Am. Compl.* [#107] ¶¶ 53-54, 56, 60.

Plaintiff also alleges that after the disruption, Defendant Schwartz should have called a mental health employee to speak with Plaintiff about his anxiety and concerns instead of placing him in segregation. *Id.* ¶¶ 41, 44, 51, 57.[9] Plaintiff alleges that he is a qualified individual under the ADA and was denied the benefits of an ADA required program or activity when "[Defendants] treated him [differently] from non-mentally ill prisoners accessing the same program of the law library."[10] *Id.* at ¶ 53-54. Plaintiff also alleges that Defendant Bland "furthered the concealment of [D]efendant [Schwartz's] failure to accommodate benefits of programs and provide adequate access to that law library program and denied the [Plaintiff's] witness establishing [notice] of an ADA issue in witness's statement proffered at the hearing that put [D]efendant [Bland] on [notice] of the need for review of evidence of an ADA matter surrounding the facts of the charges against him." *Id.* ¶ 57. Plaintiff further alleges that by provoking him despite his anxiety and paranoia disorders, of which Defendant Schwartz allegedly had knowledge, Defendant Schwartz discriminated against him based on his alleged disability. *Id.* ¶¶ 56, 59. Plaintiff "seeks compensatory damages for the violations of the ADA, from the [D]efendants and the [s]tate . . . for the loss of privileges and quality of life in his prison living conditions, and loss of the limited liberty enjoyed by prisoners, resulting from his segregated confinement" and alleges that he continues to suffer from his loss of good time resulting from Defendants'

---

[9]   The Court again notes the absence of any allegations that Defendant Schwartz was responsible for making the decision to place Plaintiff in administrative segregation.

[10]   Plaintiff alleges that he was denied the "benefits of a program protected by the ADA statutes and regulations of the federal government applicable to the states under Title II." *Fourth Am. Compl.* [#107] at 38. The Court interprets Plaintiff to allege that Defendants discriminated against him based on his alleged disability, which violated his rights pursuant to the ADA.

"willful and wanton failure to accommodate with deliberate indifference of the benefits of a program protected by the ADA."[11]  *Id.* at 38.

Three Circuit Courts of Appeal have held that the ADA's detailed remedial scheme bars plaintiffs from maintaining a § 1983 action against individual defendants for alleged violations of the ADA.  *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that a plaintiff cannot bring a § 1983 suit to vindicate rights created under Title II of the ADA); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (same); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) (holding that "a plaintiff may not maintain a Section 1983 action in lieu [of or] in addition [to a] Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the [individual's] rights created by the Rehabilitation Act and the ADA").  Additionally, as recently made clear by the Supreme Court, "[t]he provision of an express, private means of redress in the [ADA] itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 113 (2005). Therefore, to the extent that the Complaint purports to bring § 1983 claims against Defendants in their individual capacities for alleged violations of the ADA, such claims fail as a matter of law.

Furthermore, Title II of the ADA is not a valid abrogation of Colorado's Eleventh

---

[11]  Plaintiff alleges that "upon information and belief, [Plaintiff] continues to suffer the results of his loss of good time and earned time that prolonged his sentence and duration thereof, etc., due to the willful and wanton failure to accommodate with deliberate indifference of the benefits of a program protected by the ADA statutes and regulations of the federal government applicable to the states under Title II." *Fourth Am. Compl.* [#107] at 38.  Plaintiff does not specifically identify who allegedly willfully and wantonly failed to accommodate him.  The Court interprets this allegation as being made against both Defendants.

Amendment immunity from claims for damages. *Chaffin v. Kansas State Fair Bd.,* 348 F.3d 850, 866 (10th Cir.2003).  Therefore, Plaintiff may seek only prospective injunctive relief, and not damages, based on an alleged violation of the ADA.  *Id.*  Punitive damages may not be awarded in a private cause of action brought under Title II of the ADA.  *Barnes v. Gorman,* 536 U.S. 181, 189 (2002).  Thus, Plaintiff is limited to prospective injunctive relief on his ADA claim.  *See Grant v. Scott*, No. 13-CV-00153-KMT, 2013 WL 5567485 (D. Colo. Oct. 9, 2013). Accordingly, the Court **recommends** that Plaintiff's ADA claims for monetary relief against Defendants in their individual capacities **be dismissed with prejudice**. *McConnell,* 2012 WL 3590762, at *12-13 (stating that dismissal with prejudice was appropriate where no amendment to the plaintiff's complaint could overcome the established law).  The Court further **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's ADA claims against Defendants in their individual capacities for monetary relief, the Motion should **be granted**.

To the extent that Plaintiff seeks to allege that Defendant Schwartz violated the ADA by failing to call a mental health employee to speak with Plaintiff rather than placing him in segregation, the Tenth Circuit has held that the ADA does not provide a private right of action to challenge medical treatment.  *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005).  However, Plaintiff still retains a private right of action under the ADA if he sufficiently alleges that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d

1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132); *see Coyle*, 2014 WL 2566293, at n.4.

The Tenth Circuit has held that to allege the third element of a prima facie case, a plaintiff must "[allege] some affirmative [facts showing] that disability was a determining factor in the [denial of ADA benefits or discriminatory action]." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001) (emphasis added) (citations and quotations omitted). Plaintiff "need not, however, [allege] that the discriminatory motive was the sole reason [denying benefits] . . . rather, he must [allege] only that it was a 'determining factor.'" *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008) (internal quotation marks omitted)).

At best, Plaintiff asserts that he was denied the benefit of a mental health counselor when he had a disagreement with Defendant Schwartz in the library. Even assuming, arguendo, that such a counselor is a viable benefit under the ADA, Plaintiff fails to allege that Defendant Schwartz was discriminatorily motivated based on Plaintiff's alleged disability. While Plaintiff alleges that Defendant Schwartz stated "I do not care about his 'weirdo' mental health issues," provoked and taunted him despite his disorders, and treated him differently from non-mentally ill prisoners, he fails to allege facts supporting the conclusion that his disability was a "determining factor" in Defendant Schwartz's decision to deny Plaintiff library access or make a disciplinary report. *Fourth Am. Compl.* [#107] ¶¶ 24, 54, 56. Instead, Plaintiff alleges that Defendant Schwartz retaliated against him for his prior grievances against prison staff and future lawsuit against Defendant Schwartz. He does not allege facts supporting the conclusion that his alleged disability was a motivating

factor in Defendant Schwartz's decision. *See Richardson v. Butler*, No. 12-cv-02912, 2014 WL 700177, at *14 (D. Colo. Feb. 20, 2014) (dismissing ADA claim where the plaintiff alleged that the defendants "deliberately disregarded" the plaintiff's "ADA approved accommodations" but never alleged facts showing that they intentionally discriminated because of his disability).   Because Plaintiff does not allege that his disability was a "determining factor" in Defendant Schwartz's actions, the Court **recommends** that Plaintiff's ADA claim for injunctive relief against Defendant Schwartz in her individual capacity be **dismissed without prejudice**. *Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").   The Court further **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's ADA claim against Defendant Schwartz in her individual capacity for injunctive relief, the Motion should **be granted**.[12]

## D.     Injunctive/Declaratory Relief

As stated above, Defendants are entitled to Eleventh Amendment immunity regarding Plaintiff's official capacity claims for monetary relief.   *See supra* § III.A. Defendants are also entitled to qualified immunity regarding all of Plaintiff's claims for

---

[12]   Plaintiff alleges that Defendant Bland "furthered the concealment of [D]efendant Schwartz's failure to accommodate benefits of programs and provide adequate access to that law library program and denied the [Plaintiff's] witness establishing notice of an ADA issue in witness's statement proffered at the hearing that put [D]efendant Bland on notice of the need for review of evidence of an ADA matter surrounding the facts of the charges against him, and he was indifferent to the need to remain impartial and/or in connection with it, constituting an 8th amendment violation." *Fourth Am. Compl.* [#107] ¶ 57.   It is far from clear on the face of Plaintiff's Complaint that he is attempting to advance an ADA claim against Defendant Bland.   Accordingly, the Court interprets the Complaint as only asserting an ADA claim against Defendant Schwartz.

monetary relief except his First Amendment meaningful access to the courts and retaliation claims against Defendant Schwartz.  *See supra* § III.B.

Furthermore, for the reasons stated above, the Court **recommends** that all of Plaintiff's federal official and individual capacity claims for injunctive and declaratory relief, except for Plaintiff's First Amendment meaningful access to the courts and retaliation claims against Defendant Schwartz, **be dismissed** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's federal claims against Defendants in their official and individual capacities for injunctive and declaratory relief, except for Plaintiff's First Amendment meaningful access to the courts and retaliation claims against Defendant Schwartz, the Motion should **be granted**.

With respect to Plaintiff's two remaining First Amendment claims seeking declaratory relief, he has the right to assert official capacity claims against Defendants only to "end a continuing violation of federal law."  *Green v. Mansour*, 474 U.S. 64 (1985); *Ex Parte Young*, 209 U.S. 123 (1908).  Here, Plaintiff alleges that he was denied meaningful access to the courts and retaliated against when Defendant Schwartz allegedly placed him in segregation after a grievance was filed against him.  However, Plaintiff does not allege that Plaintiff continues to be held in segregation due to Defendant Schwartz's actions or that Defendant Schwartz continues to deny him access to the courts.  *See Verizon Md. V. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("[A] court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.").  Therefore, because Plaintiff's

First Amendment claims all involve past incidents and do not allege ongoing violations of federal law, he does not seek prospective relief here.  Accordingly, the Court **recommends** that Plaintiff's official capacity claims for declaratory relief against all Defendants **be dismissed with prejudice**.  *McConnell,* 2012 WL 3590762, at *12-13 (stating that dismissal with prejudice was appropriate where no amendment to the plaintiff's complaint could overcome the established law).  Plaintiff's remaining federal claims are his two First Amendment claims against Defendant Schwartz in her individual capacity for monetary damages, injunctive relief, and declaratory relief, and against Defendant Schwartz in her official capacity for injunctive relief.  The Court **recommends** that, to the extent the Motion seeks dismissal of Plaintiff's federal claims against Defendants in their official capacities for declaratory relief, the Motion should **be granted**.

**E.    Punitive Damages**

Plaintiff seeks punitive damages on the basis that Defendants' alleged violations of Plaintiff's First and Fourteenth Amendment rights were committed willfully, wantonly, and intentionally "with full knowledge of the existence and validity of the [Plaintiff's] rights intact." *Id.* ¶ 15.  He asserts that their alleged actions while possessing this state of mind warrant punitive damages.  *Id.*

Punitive damages are available in a 42 U.S.C. § 1983 action when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983);  *see also Soderbeck v. Burnett County*, 752 F.2d 285, 291 (7th Cir. 1985) (stating that "punitive damages . . . are reserved for cases where the wrongfulness of the

defendant's conduct is conspicuous, implying that its wrongfulness is apparent to the person who engages in it, and not just to a lawyer").

Here, Plaintiff alleges that Defendant Schwartz authorized Plaintiff's placement in segregation in retaliation for Plaintiff filing a grievance against her.  Plaintiff alleges that Defendant Schwartz told him not to file a grievance against her like he did against correctional officer Smith and allegedly proceeded to harass him multiple times.  *Id.* ¶ 9. Additionally, Plaintiff alleges that Defendant Schwartz placed him in segregation after he filed a grievance against her.  *Id.* ¶¶ 10, 59-60.[13]  These allegations support the conclusion that Defendant Schwartz was recklessly indifferent to Plaintiff's right to file a grievance and intended to punish him for exercising his First Amendment rights.  The Court finds that Defendant Schwartz's alleged comment to Plaintiff discouraging him from filing a grievance sufficiently alleges that she was recklessly indifferent to Plaintiff's federally protected First Amendment rights.  *Smith*, 461 U.S. at 56.

Accordingly, Plaintiff properly seeks punitive damages for his two First Amendment claims against Defendant Schwartz.  The Court, therefore, **recommends** that Defendants' Motion **be denied** to the extent that it seeks dismissal of Plaintiff's request for punitive damages against Defendant Schwartz in her individual capacity for First Amendment violations, but **granted** as to all other requests for punitive damages.

**F.      State Law Claims**

Plaintiff asserts claims against Defendants under the "Colorado Constitution Article

---

[13]  Again, the Court interprets this allegation to mean that Defendant Schwartz's alleged false report led to Plaintiff's placement in segregation, as there is no allegation that Defendant Schwartz actually made the placement decision.

II, section 10," "CRS title 24 article(s) 12 and 18" "A.R. 1450-01," and "ACA Standards [4-4120] and [4-4069]." *Fourth Am. Compl.* [#107] at 7. Defendant argues that these claims should be dismissed because § 1983 does not provide a basis for redressing violations of state law, but only violations of federal law committed under color of state law. *Motion* [#115] at 13-14 (citing *Jones v. City and County of Denver, Colo*, 854 F.2d 1206, 1209 (10th Cir. 1998)).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant has violated either the United States Constitution or a federal statute. Section 1983 does not create any substantive rights, but instead creates a jurisdictional and procedural vehicle for persons to bring actions to vindicate their civil rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618 (1979). Section 1983 does not, however, provide a basis for "redressing violations of state law," but only for those violations of federal law done under color of state law. *Jones*, 854 F.2d at 1209.

"[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Jones*, 854 F.2d at 1209; *ANR Pipeline Co v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir. 1998) ("[F]ederal courts have no jurisdiction to entertain a suit that seeks to require the state official to comply with state law."); *Johns*, 57 F.3d at 1553 ("[T]he Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating state law."). Therefore, the Court finds that Plaintiff may not assert his § 1983 state law claims against Defendants.

Next, the Court analyzes whether Plaintiff has a private right of action to assert his state law claims. First, with respect to Plaintiff's claim brought pursuant to Article II, Section

46

10 of the Colorado Constitution, the Colorado Governmental Immunity Act ("CGIA") prescribes the limits of liability for public entities within the State of Colorado. *Ybanez v. Milyard*, No. 10-cv-02234-WYD-CBS, 2011 WL 4383123, at *4 (D. Colo. Sept. 20, 2011). In general, public entites are "immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." C.R.S. § 24–10–106. Although exceptions to immunity exist for operation of a correctional facility or for dangerous conditions in jails, these waivers of immunity are not available to convicted inmates incarcerated therein. § 24–10–106(1.5) ("The waiver of sovereign immunity [related to correctional facilities and jails] does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability."); *Ybanez*, 2011 WL 4383123, at *4.

Although the CGIA does not directly address claims for violations of the state constitution, the Colorado Supreme Court has refused to expand governmental liability for such violations. In *Board of Cnty. Comm'rs of Douglas County v. Sundheim*, 926 P.2d 545, 549–550 (Colo. 1996), the court refused to recognize an implied cause of action for violation of due process and equal protection rights under the Colorado Constitution, stating that the CGIA "clearly defines the boundaries within which aggrieved citizens may obtain relief." *Ybanez*, 2011 WL 4383123, at *4. Because Defendants are entitled to sovereign immunity under the CGIA, the Court **recommends** that Plaintiff's claims for monetary damages **be dismissed with prejudice** to the extent they are brought for violations of the Colorado Constitution. *McConnell,* 2012 WL 3590762, at *12-13 (stating that dismissal with

prejudice was appropriate where no amendment to the plaintiff's complaint could overcome the established law).

Plaintiff also alleges that Defendants violated Colo. Rev. Stat. § 24-12 and § 24-18 by breaching their oaths of office and failing to implement meaningful procedures to discourage "lawless officials' conduct." *Fourth Am. Compl.* [#107] at 7-8.  First, § 24-12 generally explains the oath process and who has the power to administer oaths. *See* Colo. Rev. Stat. § 24-12-101-§ 24-12-108.  Plaintiff fails to allege how this provision was violated by Defendants.   Second, Plaintiff fails to specifically point to which of § 24-18's many provisions was violated by Defendants' alleged breach of their oaths of office and failure to implement meaningful procedures to discourage "lawless officials' conduct." *See* § 24-18-101-§ 24-18-206.  A pleading must allege sufficient factual matter to support a "short and plain statement of the claim." *Iqbal*, 556 U.S. at 677-678.  Plaintiff here has alleged neither sufficient factual matter nor which provision was allegedly violated by Defendants. Accordingly, the Court **recommends** that Plaintiff's state law claims **be dismissed without prejudice**. *Brereton*, 434 F.3d at 1216-1217 (recognizing the established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

Plaintiff also alleges that Defendants violated multiple CDOC Administrative Regulations.  *See Fourth Am. Compl.* [#107] at 7, ¶¶ 14, 41, 59, 64-65, 70.

The U.S. Supreme Court has rejected the notion that administrative regulations can themselves utilize "rights-creating" language to create a private cause of action.  *Alexander*

*v. Sandoval*, 532 U.S. 275, 289-293 (2001) (insisting that administrative regulations cannot create private causes of action outside the scope of substantive rights); *Freeman v. Costa*, No. 10-cv-644-JLK, 2012 WL 683509, at *2 (D. Colo. Mar. 2, 2012) ("[A]dministrative [regulations]–unlike legislative enactments–neither create private causes of action for their violation nor relieve litigants of their evidentiary burdens in private litigation."). Therefore, here, Plaintiff has no right to enforce prison regulations through a private legal action, except to the extent that those regulations implicate constitutional rights. The Court has already concluded that Plaintiff cannot bring a § 1983 claim for these alleged violations and has addressed the constitutional implications asserted by Plaintiff. Hence, Plaintiff fails to allege claims against Defendants for violations of the CDOC Administrative Regulations. Accordingly, the Court **recommends** that Plaintiff's claims against Defendants for violations of the CDOC Administrative Regulations **be dismissed with prejudice**. *McConnell,* 2012 WL 3590762, at *12-13 (stating that dismissal with prejudice was appropriate where no amendment to the plaintiff's complaint could overcome the established law).

### III. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' **Motion** [# 115] be **GRANTED in part** and **DENIED in part** as follows:

IT IS RESPECTFULLY **RECOMMENDED** that Defendants' Motion be **GRANTED** as to all claims except Plaintiff's First Amendment meaningful access to the courts and retaliation claims against Defendant Schwartz in her individual capacity for monetary damages, injunctive relief, and declaratory relief, and against her in her official capacity for injunctive relief.

IT IS FURTHER **RECOMMENDED** that Plaintiff's remaining claims against all Defendants be **DISMISSED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-148 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-1413 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

IT IS HEREBY **ORDERED** that

Dated:  July 24, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge