**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02764-REB-KLM

JAMES FAIRCLOTH,

    Plaintiff,

v.

CELIA SCHWARTZ, Legal Assistant for BVCF, in her official and individual capacities,

    Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is the **Defendant's Motion for Summary Judgment** [#196],[1] filed January 25, 2016. I grant the motion.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v.***

---

[1] "[#196]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

***Zenith Radio Corp.***, 475 U.S. 574, 586 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Id.*** at 1518. Under Fed. R. Civ. P. 56(c), a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to materials in the record. The court is required to consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

The plaintiff is acting *pro se*. Therefore, I construe his pleadings and other filings generously and with the leniency due to *pro se* litigants. ***See Erickson v. Pardus***, 551 U.S. 89, 94 (2007); ***Andrews v. Heaton***, 483 F.3d 1070, 1076 (10th Cir. 2007); ***Hall v. Belmon***, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing ***Haines v. Kerner***, 404 U.S. 519,

2

520-21 (1972)). Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110.

### III. BACKGROUND & FACTS

The plaintiff, James Faircloth, is an inmate in the Colorado Department of Corrections (DOC). In this case, Mr. Faircloth asserts two claims against the defendant, Celia Schwartz. First, Mr. Faircloth alleges that Ms. Schwartz interfered with his right of access to the courts. Second, Mr. Faircloth alleges that Ms. Schwartz retaliated against him as a result of grievances Mr. Faircloth filed against Ms. Schwartz.

Ms. Schwartz seeks summary judgment on both claims. All other claims asserted by Mr. Faircloth in this case have been dismissed. *Recommendation* [#131]; *Order* [#143].

Mr. Faircloth has not filed a response to the motion for summary judgment.[2] After the motion for summary judgment was filed, Mr. Faircloth filed a motion for an extension of time to file a response [#200]. I denied that motion. *Order* [#204].

In his motion for extension of time [#200] and an affidavit [#206], Mr. Faircloth outlines the bases for his contention that summary judgment is not proper. Because Mr. Faircloth id proceeding *pro se*, I treat those filings as his response to the motion for summary judgment.

The statements of Mr. Faircloth in his motion for extension of time [#200] were not made under oath. As a result, these statements are not admissible evidence which properly can be considered in support of a response to a motion for summary judgment. Nevertheless, I have considered these statements in assessing the motion for summary

---

[2] The failure to respond does not entitle the defendant to a "default" summary judgment *ipso facto*. **Murray v. City of Tahlequah, Oklahoma**, 312 F.3d 1196, 1200 (10th Cir. 2002).

3

judgment.

The statements of Mr. Faircloth in the affidavit [#206] are made under oath and may be considered as evidence in support of a response to the motion for summary judgment, at least to the extent those statements do not face other evidentiary hurdles. As discussed below, Mr. Faircloth relays in the affidavit [#206] several statements of other people. The admissibility of these statements is problematic because they are hearsay and are not made under oath. It is not proper to consider inadmissible evidence when resolving a motion for summary judgment. However, even if I ignore these issues of evidence and consider the statements of other people as described by Mr. Faircloth, Ms. Schwartz is entitled to summary judgment.

In the end, the uncontroverted facts established by the evidence cited in the motion for summary judgment and in the responsive filings of Mr. Faircloth [#200 & #206] show that Ms. Schwartz is entitled to summary judgment.[3]

The events at issue took place in October and November 2012. At that time Mr. Faircloth was an inmate at the Buena Vista Correctional Facility (BVCF), a prison operated by the DOC.[4] Ms. Schwartz was a librarian at the BVCF law library. The claims of Mr. Faircloth concern incidents in the BVCF law library on October 10, November 16, November 28, and November 30, 2012. Mr. Faircloth filed prison grievances concerning these incidents which are relevant to his retaliation claim.

October 10, 2012, Incident - On October 10, 2012, Mr. Faircloth attended his morning law library appointment. *Affidavit of Celia Schwartz* [#196-1] (Schwartz

---

[3] I refer to the exhibits attached to the motion for summary judgment [#196] by their designation in the motion, *e.g.* "Exhibit A."

[4] In various places in the affidavits, the parties refer to BVMC, which I read to mean the Buena Vista Minimum Center, a part of BVCF.

4

Affidavit), ¶ 8. For nearly two hours, Ms. Schwartz says, Mr. Faircloth was rude to Ms. Schwartz and constantly interrupted Ms. Schwartz with questions about library procedures. *Id.* Mr. Faircloth demanded that Ms. Schwartz immediately open boxes containing updated copies of Colorado Revised Statutes even though Ms. Schwartz repeatedly told Mr. Faircloth that on-line versions of the statutes, which were up to date, were readily available to Mr. Faircloth. *Id.* Ms. Schwartz was busy with other duties and was not able to open the boxes and shelve the updated copies of the Colorado Revised Statutes immediately as requested by Mr. Faircloth. *Id.* Because Mr. Faircloth continued to exhibit argumentative, angry, and disruptive behavior, Ms. Schwartz told him to leave the library. *Id.* As Mr. Faircloth was gathering his things, he said: "I've heard about this chick before, and I'm going to take care of this chick right now!" *Id.* Ms. Schwartz perceived this statement as a threat. In an unsworn statement, Mr. Faircloth says he did not exhibit argumentative, angry, and disruptive behavior that day and contends Ms. Schwartz falsely reported that Mr. Faircloth exhibited such behavior. *Motion for extension of time* [#200], p. 5.

Ms. Schwartz informed security that Mr. Faircloth left the library in an agitated state. *Id.* Security staff put Mr. Faircloth on removal from population status pending an investigation. *Id.*, ¶ 9. Ms. Schwartz had no involvement or input in that decision. *Id.* Ms. Schwartz wrote an Incident Report concerning these events. *Id.* As a result of this incident, Mr. Faircloth was charged with two Code of Penal Discipline (COPD) violations, verbal abuse and advocating or creating facility disruption. *Id.*, ¶ 11. After a hearing on those charges, he was found not guilty of both charges. *Exhibit O* [#196-16]. During the COPD proceedings, Mr. Faircloth "denied making the 'chick' statement" on October 10, 2012. *Exhibit O.*

October 12, 2012, Grievance Concerning October 10, 2012, Incident - On October 12, 2012, Mr. Faircloth filed a grievance against Ms. Schwartz complaining about her refusal, on October 10, 2012, to open the boxes containing updated copies of Colorado Revised Statutes. *Exhibit F.* In the grievance, Mr. Faircloth denied making any threat on October 10, 2012. *Id.* Ms. Schwartz first learned of the grievance on November 8, 2012, when it was given to her for a response. *Schwartz Affidavit*, ¶ 12. She completed a written response on November 13, 2012. *Exhibit F.* Ms. Schwartz says inmates regularly file grievances against prison employees. *Schwartz Affidavit*, ¶ 13. She say she was not vexed by this grievance and continued to provide library services to Mr. Faircloth after this grievance was filed. *Id.* There is no dispute that Ms. Schwartz generally continued to provide library services to Mr. Faircloth.

November 16, 2012, Incident - On November 16, 2012, Mr. Faircloth was using a computer in the law library. Ms. Schwartz directed Mr. Faircloth to complete his work on the computer 15 minutes before the library session ended that day, as required by DOC policy. *Schwartz Affidavit*, ¶ 25. On November 16, 2012, Mr. Faircloth signed a law library computer request which states clearly the requirement that "**(o)ffenders will be required to complete their typing 15 minutes prior to the end of each session**." *Exhibit H* (emphasis in original).

November 28, 2012, Incident - On November 28, 2012, Mr. Faircloth attended a morning law library appointment. *Schwartz Affidavit*, ¶ 15. He submitted a photocopy request for a hand written document. *Id.* Ms. Schwartz was not able to copy the handwritten document because she did not have a copy machine at BVMC. *Id.* BVMC copies were made at BVCF. *Id.* Ms. Schwartz told Mr. Faircloth that because she had other duties, she would not be able to return the copies to Mr. Faircloth until two days

later.  Mr. Faircloth asked that copies be made that day so he could comply with a filing deadline.  *Id.*  Ms. Schwartz refused and told Mr. Faircloth he had plenty of time to hand write a second copy of the document in question.  *Id.*

In addition, Mr. Faircloth submitted a request to have certain documents printed from the computer he was using. *Id.*, ¶ 16.   However, none of the documents listed on the request existed in his computer folder.  *Id.*  Ms. Schwartz asked Mr. Faircloth to submit a second request with the documents identified correctly.  *Id.*  He submitted a second request, but the documents identified still did not exist in his computer folder. *Id.*  As a result, Ms. Schwartz could not complete his print request.  *Id.*  When Ms. Schwartz asked all inmates to leave the law library at the end of the library session, Mr. Faircloth became very agitated, stomped his feet, repeatedly slammed his papers on a desk, and said "Oh, yeah, now I have MORE evidence against you."  "I will press criminal charges on you."  *Id.*, ¶ 17.  Ms. Schwartz wrote an incident report concerning Mr. Faircloth.  *Exhibit J.*

November 30, 2012, Incident - On November 30, 2012, Mr. Faircloth attended a morning law library appointment. *Schwartz Affidavit*, ¶ 20.  He asked Ms. Schwartz to print some legal documents he had generated on a library computer.  *Id.*  One of the documents was a stand alone affidavit that was not part of any pleading or directly related to any legal matter. *Id.*  DOC Administrative Regulation 750-01 defines legal material which may be printed for an inmate by Ms. Schwartz.  *Id.*, ¶ 21.  Ms. Schwartz is not permitted to print documents which do not fit the definition of legal material provided in this regulation.  *Id.*  Ms. Schwartz refused to print the affidavit because she concluded that the affidavit did not fit the definition of legal material in DOC Administrative Regulation 750-01.  *Id.*, ¶ 22.

In response, Mr. Faircloth walked toward the desk of Ms. Schwartz while yelling that the affidavit was required by the court of appeals. Ms. Schwartz concluded the affidavit was not obviously related to a legal matter and denied the continued requests of Mr. Faircloth that Ms. Schwartz print the affidavit. *Id.* Mr. Faircloth continued yelling and was removed from the library by guards. Ms. Schwartz documented this incident in an Incident Report. *Exhibit I.*

December 3, 2012, Grievance Concerning November 28 and November 30, 2012, Incidents - On December 3, 2012, Mr. Faircloth filed a grievance in which he addressed the refusal of Ms. Schwartz to make an immediate copy of the handwritten document on November 28, 2012, and the refusal of Ms. Schwartz to print an affidavit on November 30, 2012. *Exhibit K.*

December 19, 2012, Grievance Concerning November 16, 2012, Incident - On December 19, 2012, Mr. Faircloth filed a grievance against Ms. Schwartz complaining about several things. *Exhibit L.* One complaint was that she "refused to allow (Mr. Faircloth) to use a particular computer on November 16, 2012, which was not being used." *Id.* The grievance was denied because of procedural deficiencies. *Id.*

Other Use of Law Library - Between October 10, 2012, and December 17, 2012, Mr. Faircloth was scheduled to use the law library on 18 different occasions. *Schwartz Affidavit,* ¶13. He used the library on 15 of those occasions and did not attend on three of those occasions. *Id.* During these library appointments, Mr. Faircloth received copies, supplies, court forms, and other library services. *Id.*

## IV. ACCESS TO THE COURTS

To establish his First Amendment claim of denial of access to the courts, Mr. Faircloth must show, among other things, "that a nonfrivolous legal claim had been

8

frustrated or was being impeded" because Ms. Schwartz denied Mr. Faircloth access to needed legal materials or services. ***Lewis v. Casey***, 518 U.S. 343, 353 (1996). In the motion for summary judgment [#196], Ms. Schwartz contends there is no evidence that she hindered in any way the ability of Mr. Faircloth to pursue a non-frivolous legal claim. *Motion for summary judgment* [#196], p. 14. In his filings subsequent to the motion for summary judgment [#200 & #206], Mr. Faircloth does not point to any evidence showing that his ability to pursue a non-frivolous legal claim was in any way impeded by Ms. Schwartz. Absent any evidence to establish this essential element of the access to the courts claim, Ms. Schwartz is entitled to summary judgment on that claim.

## V. RETALIATION

Prison officials may not retaliate against or harass an inmate because the inmate exercised his constitutional rights. ***Fogle v. Pierson***, 435 F.3d 1252, 1263-1264 (10th Cir. 2006). Filing a prison grievance is an exercise of the First Amendment right to petition the government for redress of grievances. *Id*. at 1264. A prisoner asserting a retaliation claim must prove specific facts showing that retaliatory action was taken by the defendant because of the prisoner exercised his constitutional rights. ***Peterson v. Shanks***, 149 F.3d 1140, 1144 (10th Cir. 1998). To establish a retaliation claim, Mr. Faircloth must prove that but for the retaliatory motive, the allegedly retaliatory actions of Ms. Schwartz would not have taken place. ***Id***.

I note one important factual limitation on the retaliation claims of Mr. Faircloth. Mr. Faircloth alleges that Ms. Schwartz retaliated against him because of grievances he filed against her. The evidence in the record shows that Mr. Faircloth filed grievances against Ms. Schwartz on October 12, December 3, and December 19, 2012. The retaliatory actions allegedly taken by Ms. Schwartz occurred on October 10, November

9

16, November 28, and November 30, 2012. The October 12, 2012, grievance is the only grievance filed by Mr. Faircloth against Ms. Schwartz before the alleged retaliatory actions taken by her on November 16, November 28, and November 30, 2012. There is no evidence that Ms. Schwartz somehow knew in advance that Mr. Faircloth would file grievances on December 3 and December 19, 2012. Absent such prescient knowledge, it was not possible for her to retaliate against Mr. Faircloth on November 30, 2012, and earlier for grievances filed on and after December 3, 2012. Any retaliation attributable to Ms. Schwartz for grievances filed against her by Mr. Faircloth must be limited to alleged retaliation for the filing of the October 12, 2012.

Ms. Schwartz argues in her motion for summary judgment that Mr. Faircloth presents no evidence to show that she took adverse action against Mr. Faircloth in retaliation for the grievances Mr. Faircloth filed against Ms. Schwartz. In his affidavit [#206], Mr. Faircloth says he has spoken to witnesses, who he names, who can testify to retaliatory behavior by Ms. Schwartz against inmates other than Mr. Faircloth.[5] *Affidavit* [#206], p. 3. Such evidence may or may not be admissible at trial, even if it were presented here in an admissible form. However, absent significant evidence that Ms. Schwartz had a retaliatory motive toward Mr. Faircloth, it is not proper to rely on evidence of retaliation by Ms. Schwartz toward inmates other than Mr. Faircloth to show that she retaliated against Mr. Faircloth. Purported retaliation against others does not, without more, prove retaliation against Mr. Faircloth.

The first allegedly retaliatory actions taken by Ms. Schwartz took place on October 10, 2012. On that date, she refused to immediately open boxes containing

---

[5] As noted previously, as presented in the affidavit [#206], the statements of these witnesses are hearsay and are not made under oath. Thus, as presented by Mr. Faircloth in his affidavit [#206], these statements are not admissible in evidence.

10

updated copies of Colorado Revised Statutes at the request of Mr. Faircloth. According to Ms. Schwartz, Mr. Faircloth continued to exhibit argumentative, angry, and disruptive behavior in the library. Ultimately, Ms. Schwartz told him to leave the library. Mr. Faircloth later was removed from population and was charged with the COPD charges. Mr. Faircloth says he did not exhibit argumentative, angry, and disruptive behavior that day and contends Ms. Schwartz falsely reported that Mr. Faircloth exhibited such behavior.

No matter which version of these events is true, the actions of Ms. Schwartz on October 10, 2012, may not form the basis for a retaliation claim based on grievances filed by Mr. Faircloth against Ms. Schwartz. This is true because Mr. Faircloth has not pointed to any evidence that he had engaged in protected activity by filing a grievance against Ms. Schwartz prior to October 10, 2012. His first grievance against Ms. Schwartz was filed on October 12, 2012. Absent some evidence of a protected activity by Mr. Faircloth prior to October 10, 2012, incident, Ms. Schwartz may not be said to have retaliated against Mr. Faircloth for having engaged in a protected activity on October 10, 2012.

The second allegedly retaliatory action taken by Ms. Schwartz took place on November 16, 2012. On that date, Ms. Schwartz required Mr. Faircloth to complete his work on a computer in the law library 15 minutes prior to the end of his library session. This is consistent with the requirements of prison rules. Eight days prior to this incident, Ms. Schwartz learned of the grievance filed against her by Mr. Faircloth concerning the October 20, 2012, incident. Thus, the filing that grievance is ostensibly a protected activity.

However, Mr. Faircloth has not pointed to any evidence in the record that Ms.

Schwartz enforced the 15 minute rule with a retaliatory motive. Mr. Faircloth has not pointed to any evidence that but for the alleged retaliatory motive of Ms. Schwartz, Mr. Faircloth would not have been required to comply with the 15 minute rule. The evidence in the record shows that the 15 minute rule is the normal requirement in the law library and this rule is emphasized to inmates each time they request to use a computer. This shows that the 15 minute rule is the usual requirement imposed on all inmates and would have been enforced as to Mr. Faircloth whether or not Ms. Schwartz had a retaliatory motive.

The third allegedly retaliatory actions taken by Ms. Schwartz took place on November 28, 2012. On this day, Ms. Schwartz was not able to copy immediately a hand written document. Mr. Faircloth wanted a copy immediately. Ms. Schwartz told him she could not provide a copy until two days later. In addition, Ms. Schwartz was not able to fulfill two print requests of Mr. Faircloth because the documents listed on the two print requests did not exist in the computer folder of Mr. Faircloth. Twenty days prior to this incident, Ms. Schwartz learned of the grievance filed against her by Mr. Faircloth concerning the October 20, 2012, incident. Thus, filing that grievance is ostensibly a protected activity.

However, Mr. Faircloth has not pointed to any evidence in the record that Ms. Schwartz would not provide an immediate copy of the hand written document and would not fulfill his two print requests because of her alleged retaliatory motive. Mr. Faircloth has not pointed to any evidence which tends to show that but for the alleged retaliatory motive of Ms. Schwartz, she would have provided an immediate copy of the handwritten document and would have printed documents listed in his two print requests even though the documents listed in the two print requests did not exist in the computer folder

12

assigned to Mr. Faircloth.  The evidence in the record shows there routinely was a practical limit on immediate copies at BVMC.  The evidence in the record shows that inmates routinely are required to include in their print requests documents which actually exist in the computer folder assigned to the inmate.  This evidence indicates that these limits and requirements were enforced on all inmates and would have been enforced as to Mr. Faircloth whether or not Ms. Schwartz had a retaliatory motive.

The fourth allegedly retaliatory actions taken by Ms. Schwartz took place on November 30, 2012.  On this day, Ms. Schwartz refused to print an affidavit for Mr. Faircloth because she concluded that the affidavit did not fit the definition of legal material in DOC Administrative Regulation 750-01.  Twenty-two days prior to this incident, Ms. Schwartz learned of the grievance filed against her by Mr. Faircloth concerning the October 20, 2012, incident. Thus, fFiling that grievance is ostensibly a protected activity.

Mr. Faircloth has not pointed to any evidence in the record that Ms. Schwartz would not print the affidavit because of her alleged retaliatory motive.  Mr. Faircloth has not pointed to any evidence which tends to show that but for the alleged retaliatory motive of Ms. Schwartz, she would have printed the affidavit which did not comply with the applicable regulation.  The evidence in the record shows that DOC Administrative Regulation 750-01, which defines legal material which may be printed, is enforced as a routine matter.  This evidence indicates that this requirement was enforced on all inmates and would have been enforced as to Mr. Faircloth whether or not Ms. Schwartz had a retaliatory motive.

Viewing the undisputed facts evidenced in the record in the light most favorable to Mr. Faircloth, no reasonable fact finder could find in favor of Mr. Faircloth on any of

his retaliation claims. Thus, the defendant is entitled to summary judgment on the retaliation claims.

## VI. INJUNCTIVE & DECLARATORY RELIEF

The grant of summary judgment to Ms. Schwartz resolves all remaining claims in this case. With no valid claims pending, Mr. Faircloth has no basis to seek injunctive and declaratory relief. In addition, as noted by Ms. Schwartz, Mr. Faircloth no longer is housed at a prison where Ms. Schwartz works. Thus, the requests of Mr. Faircloth for injunctive and declaratory relief are moot.

## VII. CONCLUSION & ORDERS

Viewing the undisputed facts in the record in the light most favorable to Mr. Faircloth, Ms. Schwartz is entitled to summary judgment on the access to the courts claim and the retaliation claims asserted by Mr. Faircloth. Based on the evidence cited in the motion for summary judgment and the documents filed by Mr. Faircloth in response, no reasonable fact finder could find in favor of Mr. Faircloth on these claims.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendant's Motion for Summary Judgment** [#196], filed January 25, 2016, is granted;

2. That based on this order and the previous order [#143] of the court granting a motion to dismiss, judgment shall enter in favor of the defendants, Celia Schwartz and Gerry Bland[6], and against the plaintiff, James Faircloth, on all claims asserted in this case;

3. That all claims asserted in this case are dismissed with prejudice;

---

[6] Gerry Bland was dropped as a defendant in this case when all claims against him were dismissed. *Order* [#143].

14

4.  That all pending pretrial deadlines, the combined Final Pretrial Conference and Trial Preparation Conference set March 11, 2016, at 1:00 p.m., and the trial set to commence March 14, 2016, are vacated;

6.  That defendants are awarded their costs to be taxed by the clerk of the court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

7.  That this case is closed.

Dated March 7, 2016, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge